PIONEER WOOD-PULP COMPANY, Respondent, vs. BENSLEY, Appellant.

*January 10 — January 31, 1888.*

*Preliminary injunction: Indefiniteness of complaint: Discretion: Mills and mill dams.*

1. Though the allegations of a complaint are somewhat indefinite, yet if the plaintiff clearly intended to set out a claim of right under a certain specified grant by the legislature, the defendant, who has

Pioneer Wood-Pulp Co. vs. Bensley.

not moved to make more definite, should not be allowed to set up such indefiniteness as an objection to the granting of a preliminary injunction.

2. When the plaintiff shows fair and reasonable grounds for asserting the right claimed (in this case to rebuild and maintain a dam which has been partially destroyed by the defendant), the granting of a preliminary injunction is very much in the discretion of the court; and where such injunction would work little or no injury to the defendant, but the refusal to grant it would result in great and irreparable injury to the plaintiff, it should usually be granted.

APPEAL from the Circuit Court for *Waukesha* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This is an appeal from an order granting a temporary injunction pending the litigation. The material facts in the case are as follows: The plaintiff is the owner of a water-power and a large wood-pulp factory on the east side of the Wisconsin river, and the defendant is the owner of the lands on the west side of the river, and of mills and machinery running on that side, and also of an island in the river, designated in the complaint as "Nine-Acre Island." The plaintiff, and those under whom it claims title, have maintained a dam in said river, extending from the foot of said "Nine-Acre Island" in a southeasterly direction to the easterly bank of said river, ever since 1847, until the 6th of April, 1887; and such dam created a water-power by which the mills and machinery of the plaintiff, and those under whom it claims, have been run and propelled during all those years. The complaint, as amended, alleges "that said dam was built, kept up, and maintained at the same height, used and enjoyed, continuously and uninterruptedly by the prior owners of said power and premises from about 1847 to the time when this plaintiff went into possession thereof as aforesaid, and that the right and authority to keep up and maintain said dam has come to and is now held by it by various conveyances duly executed by the

prior owners of said premises and water-power, as also by long-continued and uninterrupted use and enjoyment of said dam and the benefits derived therefrom by such prior owners under and through whom this plaintiff holds title and is now in possession;" "that said dam was continued to be kept up and maintained, used and enjoyed by this plaintiff from the time of its said purchase, in entirety, until about the 6th day of April, 1887." "And plaintiff further alleges that it is now, and was on and prior to the said 6th day of April, the absolute owner in fee of the franchise and rights granted to said Miner and Clinton by said act of January 2, 1847, as amended by ch. 88, Laws of 1851." The plaintiff had in the preceding part of its complaint alleged that the legislature of the territory of Wisconsin had, in 1847, granted to said Miner and Clinton the right to build and maintain said dam in and across said river, from the foot of said " Nine-Acre Island " to the east shore of said river.

The complaint then alleges that on the 28th day of March, 1887, the defendant caused a notice in writing to be served on the plaintiff, of which the following is a copy, viz.:

" *To the Pioneer Wood-Pulp Company, Limited, and to George E. Hoskinson, Caroline R. Hoskinson, R. F. A. McKinnon, and W. E. Mack:* You and each of you are hereby notified that the permission or license for the building and maintaining of the following-described dam upon my lands is hereby revoked and canceled, and I hereby demand that you forthwith remove and take the same from my lands. Said dam is situated in the Wisconsin river, between the cities of Grand Rapids and Centralia, in Wood county, Wisconsin, and that portion thereof situated upon my lands, and which you are notified to remove, is described and located as follows, viz.: Beginning on the southeasterly side of lot No. 9, in township No. 22 north, of range No. 6

east, in said Wood county, and running thence in a south-
easterly direction down and across that part of the bed of
said river owned by me to the center line or thread of said
stream; and you and each of you are hereby forbidden to
repair or rebuild any part of said dam situated on my lands
as aforesaid, or to enter thereon for any purpose except to
take out and remove said dam."

The complaint then alleges that such dam was not re-
moved by the said plaintiff, and that about 2 o'clock in the
morning of April 6, 1887, "the defendant secretly, and
under the cover of darkness, maliciously designing, contriv-
ing, and intending to injure the property and rights of this
plaintiff, and to harass, annoy, and distress it, by her agents,
servants, and employees, unlawfully caused about one hun-
dred feet of the westerly part of said dam to be blown out
and destroyed, thereby greatly injuring the beneficial use
of the mill and water-power of this plaintiff."

The plaintiff further alleges "that those under whom it
claims and has title to said premises, water-power, and dam,
for more than twenty years immediately succeeding the
said year 1847, to wit, for nearly forty years thereafter,
continuously and uninterruptedly kept up and maintained
said dam across the main channel of said river, abutting
the same on said 'Nine-Acre Island,' and uninterruptedly
flooded during all said period the lands above, as fully and
to as great an extent as they were being flooded when said
dam was destroyed; that said dam was maintained and was
abutted upon said island or shore during all of said period,
and continuously and uninterruptedly for upwards of twenty
years, with the full knowledge of those claiming adverse
interests in said westerly shore and island, and against the
interests of such claimants or owners, under a claim of right
to so do and not otherwise." There are other allegations
in the complaint showing that the plaintiff will suffer great
and irreparable injury and damages unless he be permitted

to rebuild said dam during the summer of 1887, and that the defendant threatens to prevent the rebuilding of such dam and to destroy the same should it be so rebuilt. The prayer is that the court will by its judgment establish the right of the plaintiff to build and maintain said dam and abut the same on said island; "that the defendant, her agents and servants, may be enjoined and restrained from in any manner interfering with, hindering, and delaying this plaintiff in rebuilding and restoring the said dam and the part thereof destroyed to the height it was when destroyed, and entering upon and abutting the same on the said 'Nine-Acre Island,' and from in any manner interfering with, injuring, or destroying said dam or any portion thereof when rebuilt, and from interfering with the beneficial use derivable therefrom and appurtenant thereto."

The plaintiff, upon the sworn complaint and the affidavit of one John Rablin in support of the allegations of the complaint, obtained an order from the circuit court on the defendants to show cause why a preliminary injunction should not be granted as prayed for in the complaint. On the hearing of this order, the defendant presented her sworn answer and the affidavit of one Charles B. Garrison, and the plaintiff, in rebuttal, offered the affidavit of one William H. Brown. On the hearing of the order to show cause, the court granted the injunction as prayed for. From this order the defendant appeals.

For the appellant there was a brief by *Gardner & Gaynor*, attorneys, and *L. P. Powers* and *David S. Ordway*, of counsel, and the cause was argued orally by *Mr. Ordway*.

*Geo. L. Williams*, for the respondent.

TAYLOR, J. It is urged by the learned counsel for the appellant that the order should not have been made. We think the complaint states facts sufficient to show that the plaintiff has fair grounds for claiming that he has the right

to maintain the dam in the place where it has been maintained for more than twenty years before it was destroyed by the defendant, upon two grounds, viz.: *First*, under the grant of the legislature of 1847, as successor to the rights of the said Clinton and Miner; and, *second*, under the statute of limitations. It may be true, as claimed by the learned counsel for the appellant, that the allegations of the complaint are too general and uncertain to make out a clear right under the first claim, and that the claim under the statute of limitations is met by the affidavit of Charles B. Garrison, which tends to prove that the dam was placed in the river with the consent of those under whom the defendant claims, and not under a claim hostile to them. We think the allegations of the complaint are sufficiently definite to permit the plaintiff, if it can, to prove that the dam was placed in the river by the authority given by the said act, for the improvement of the navigation of said river, and that as an incident of such improvement of navigation the water-power was created, the right to use which is vested in the plaintiff. The allegations of the complaint upon this claim may be somewhat indefinite, but it is quite clear that the plaintiff intended to set out a claim of right under that act, and if the defendant was not satisfied with the allegations he should have moved to make them more definite and certain, and ought not to be allowed to set up such indefiniteness as an objection to the granting of the preliminary injunction. We also think that, notwithstanding the affidavit of said Garrison, the plaintiff might well be able to convince a court or jury that the dam was placed in the river under a claim of right to do so in hostility to the rights of those under whom the defendant claims. Under the allegations of the complaint, and upon all the evidence produced on the motion, it seems to us the claim made by the plaintiff is not entirely destroyed by the answer and counter-affidavit, and that there is still reasonable ground for sup-

posing that the plaintiff will be able to establish its right upon a trial of this case. In such case it is not the absolute right of the defendant to have the preliminary injunction denied, or to have it set aside when granted. When the plaintiff shows fair and reasonable grounds for asserting the right claimed, then the right of the court to grant the injunction is very much in the discretion of the court, and when the granting of the injunction will be of little or no injury to the defendant, and the refusal to grant it will be of great and irreparable damage to the plaintiff, courts usually grant the injunction pending the litigation. In this case the evidence shows that the rebuilding of the dam which was destroyed by the defendant will cause but nominal damages to the defendant, and that unless the same be rebuilt by the plaintiff it will suffer very great damage by destroying the use of the plaintiff's mill in the mean time.

The rule in such cases as to granting or not granting the preliminary injunction is laid down in Kerr on Injunctions, in the following language: " The court will not interfere by way of mandatory injunction without taking into consideration the comparative convenience and inconvenience which the granting or withholding the injunction would cause the parties." Gould, in his work on Waters, § 525, says: " If a temporary injunction would cause serious damage to the defendant in case the plaintiff should fail to establish his right, and would not materially benefit the plaintiff if successful, it will be withheld until after the hearing; but if, assuming the facts alleged to be true, more harm would be caused to the plaintiff by withholding the order than in the event of his failure would be caused to the defendant by granting it, it will be granted." Justice MILLER, in the case of *U. S. v. Duluth,* 1 Dill. 469, 474, says: " In this emergency I am relieved by a principle which has generally governed me, and which, I believe, governs nearly all judges, in applications for preliminary injunctions. It

is that when the damages or injury threatened is of a character which cannot be easily remedied if the injunction is refused, and there is no denial that the act charged is contemplated, the temporary injunction should be granted unless the case made by the bill is satisfactorily refuted by the defendant."

The case at bar is not wholly unlike the case of *Sheldon v. Rockwell*, 9 Wis. 166. In that case it was held that, when the plaintiff had encouraged the defendant to expend his time and means in constructing a dam and mills, the court will not grant an injunction to restrain the rebuilding of the dam which had gone off by a flood. In the case at bar the defendant destroyed the dam after it had been maintained for nearly forty years, and seeks to prevent the plaintiff from rebuilding the same.

In the case of *Shrewsbury & C. R. Co. v. S. & B. R. Co.* 1 Sim. (N. S.), 410, 432, the learned vice-chancellor says: " I am perfectly satisfied of the authority of this court to issue an injunction, not merely to restrain the parties from doing acts, but also from entering into contracts pending the litigation that may embarrass the plaintiff in his suit, and that the court is entitled to do so whenever it sees there is a fair ground for litigation raised by the plaintiff; yet that right of the court must be guided by a discretion not to exercise it when it sees that on the balance of convenience and inconvenience between interim interference and non-interference the balance greatly preponderates in favor of the defendant and against the plaintiff. Now, here, the injury to the plaintiffs in comparison with the injury to the defendants is extremely small," etc., and in that case the injunction was refused. In the same case it was said: " The first point on which the court has to be satisfied is not, as Lord COTTENHAM says, positively that the plaintiff is right, but that he has a fair question to raise. But I do not understand Lord COTTENHAM as meaning to say that in every case

where there is a *prima facie* or probable case suggested the court will interfere; . . . for I conceive that even when it is made out that there is a point to be decided which the plaintiff is fairly raising, still there is a further question, namely, whether interim interference, on a balance of convenience and inconvenience to the one party and to the other, is or is not expedient. Where the alternative is interterference or probable destruction of the property, there, of course, the court will be ready to lend its immediate assistance, even at considerable risk that it may be encroaching on what may eventually turn out to be a legal right of the defendant."

In High on Injunctions, the learned author says: "When the legal right is not sufficiently clear to enable a court of equity to form an opinion, it will generally be governed in deciding an application for a preliminary injunction by considerations of the relative convenience and inconvenience which may result to the parties from granting or withholding the writ. And when, on balancing such considerations, it is apparent that the act complained of is likely to result in irreparable injury to the complainant, and the balance of inconvenience preponderates in his favor, the injunction will be granted." 1 High, Inj. sec. 13. See, also, secs. 937, 939, 941. The same rule is laid down in *Ingraham v. Dunnell,* 5 Met. 118; *Wason v. Sanborn,* 45 N. H. 169; *Wilcox v. Wheeler,* 47 N. H. 488; *Hough v. Doylestown,* 4 Brewst. 333, 447. See, also, sec. 524, Gould on Waters, and cases cited in note 1.

The rule of the authorities above cited fully justifies the court in granting the preliminary injunction in the case at bar. It is virtually admitted that the dam in question had been maintained for nearly forty years; that during all that time the water-power created by it had been used by the proprietors on the east side of the river, and large sums of money had been expended by the plaintiff and those

State ex rel. Town of Baraboo vs. The Board of Sup'rs of Sauk County.

under whom it claims in erecting and maintaining said dam, as well as in erecting large and extensive manufacturing establishments to be run by the water-power created by such dam. This dam the defendant secretly destroys, and then threatens to prevent the rebuilding of the same, and the destruction of it again if rebuilt. The defendant is not materially injured by the rebuilding of the dam, while it is almost ruinous to the plaintiff if the dam be not rebuilt. In this state of the case, and until the real rights of the parties can be determined in this action, it seems to us clearly equitable that the plaintiff should be permitted to rebuild pending the litigation.

*By the Court.*— The order of the circuit court is affirmed, and the cause is remanded for further proceedings.